UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-128-FDW
(3:17-cr-134-FDW-DSC-71)

| | |
|---|---|
| **DENZEL LAMONT SPIKES,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's pro se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

**I.    BACKGROUND**

Petitioner was charged in an 82-Defendant conspiracy involving the United Bloods Nation ("UBN") gang. The charges pertaining to Petitioner are: Count (1), RICO conspiracy as part of UBN,[1] an enterprise engaged in racketeering through its members and associates including multiple acts involving murder, robbery, and narcotics trafficking, and as part of the conspiracy each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise, and Petitioner committed overt acts including: OA-14,

---

[1] The Second Superseding Indictment charges that the purpose of the UBN enterprise includes:
   a. Preserving and protecting the power, territory, reputation, respect, and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults and murder;
   b. Promoting and enhancing the enterprise and its members' and associates' activities, including but not limited to, murders, robberies, narcotics distribution, and other criminal activities;
   c. Keeping the community and rivals in fear of the enterprise and its members and associates through violence and threats of violence;
   d. providing financial support and information to gang members, including leaders who are incarcerated;
   e. Providing assistance to other gang members who committed crimes for and on behalf of the gang; and
   f. Hindering, obstructing, and preventing law enforcement officers from identifying, apprehending, and successfully prosecuting and punishing members of the enterprise.
(CR Doc. No. 2374 at 11).

1

assault on or about March 31, 2012; OA-19, assault and a shooting on or about May 8, 2012; and OA-72, attempted robbery, murder of M.B. and shooting of T.C. on or about July 26, 2016 (18 U.S.C. § 1962(d)); Count (12), murder in aid of racketeering (18 U.S.C. §§ 1959(a)(1) and 2); Count (13), attempted Hobbs Act robbery on or about July 26, 2016 (18 U.S.C. §§ 1951 and 2); Count (14), using or carrying a firearm during and in relation to a crime of violence and possession of a firearm in furtherance of a crime of violence resulting in a death on or about July 26, 2016 (18 U.S.C. §§ 924(c) and 924(j) and 2); Count (15), attempted murder in aid of racketeering activity on or about July 26, 2016 (18 U.S.C. §§ 1959(a)(5) and 2); and Count (16), using or carrying a firearm in relation to a crime of violence and possession of a firearm in furtherance of a crime of violence on or about July 26, 2016 (18 U.S.C. §§ 924(c) and 2). (3:17-cr-134 ("CR") Doc. No. 2374) (Second Superseding Indictment).

Petitioner pleaded guilty to the RICO conspiracy charged in Count (1) in exchange for the Government's dismissal of the remaining counts. (CR Doc. No. 2396 at 1). The Plea Agreement contains a binding sentencing recommendation of 420 months' imprisonment. (CR Doc. No. 2396 at 2). The Plea Agreement provides that Petitioner stipulated to the existence of a factual basis to support his guilty plea, that he read and understood the written Factual Basis that was filed with the Plea Agreement, and that the Court may use the offense conduct set out in the Presentence Report ("PSR") without objection by Petitioner for any purpose. (CR Doc. No. 2396 at 4). The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, and specifically provides that Petitioner was waiving the rights to contest his conviction and/or sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. (CR Doc. No. 2396 at 5).

The Factual Basis provides in relevant part:

The UBN, including its leadership, members and associates, in the Western District of North Carolina, and elsewhere, constitutes an "enterprise," as defined by Title 18, United States Code, Section 1961(4) and 1959(b)(2)….

The purposes of the UBN enterprise include preserving and protecting the power, territory, reputation, respect and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults, and murder; promoting and enhancing the enterprise and its members' and associates' activities, including, but not limited to, robberies, murders, and other criminal activities; keeping rivals, victims, potential victims, and community members in fear of the enterprise and its members and associates through violence and threats of violence; providing financial support and information to other gang members, including those incarcerated in the United States; providing assistance to other gang members who committed crimes for and on behalf of the gang; and to hinder, obstruct, and prevent law enforcement officers from identifying, apprehending, and successfully prosecuting and punishing offenders.

All of the defendants named in the Indictment are members or associates of the UBN.

… SPIKES … is a member of the Nine Trey Gangsters Hood of the UBN and holds the rank of Five-Star General….

… On May 8, 2012, SPIKES and … DURANT were a part of a nine-person group who beat, tazed, and shot a victim on the victim's porch. Both the victim and another witness identified SPIKES as one of the assailants. SPIKES was convicted of Assault with a Deadly Weapon Inflicting Serious Injury with respect to this incident.

SPIKES agreed that he or some other member of the conspiracy would commit two or more racketeering acts, and personally committed two or more racketeering acts, including acts involving robbery and murder.

> On July 26, 2016, SPIKES was present and agreed that he and other UBN members … would commit an armed robbery of an individual of $2000 worth of marijuana in Chapel Hill, North Carolina. … OLIVER handed SPIKES several hundred dollars in cash for SPIKES to use to trick the victim into thinking that SPIKES possessed the amount of money sufficient to purchase the marijuana. HACKNEY and LEWIS subsequently returned to the victims' car with SPIKES. LEWIS and SPIKES drew firearms and attempted to rob the victims of marijuana and money at gunpoint. When the victims attempted to flee the vehicle, SPKES and LEWIS shot M.B. three times. M.B. died from his gunshot wounds. As victim T.C. ran away from the vehicle and into the woods nearby, SPIKES and

3

>        LEWIS shot at him multiple times with intent to kill. T.C. was struck
>        in the arm by a bullet. T.C. fell to the ground and played dead….
> …
>
>        At all times relevant to the Indictment, the defendant was a member of the
> UBN enterprise, knowingly and intentionally agreed to conduct or participate in the
> affairs of the UBN enterprise, and knowingly and intentionally agreed that he or
> some other member of the conspiracy would commit at least two racketeering acts.

(CR Doc. No. 2397 at 4).

A United States Magistrate Judge conducted a plea hearing pursuant to Rule 11 at which Petitioner was represented by counsel. See (CR Doc. No. 3081). Petitioner stated, under oath, that he wanted the Court to accept his guilty plea to Count (1); he understood his sentencing exposure and the consequences of pleading guilty; he understood the rights he was waiving by pleading guilty; and he was pleading guilty because he is guilty. (CR Doc. No. 3081 at 1-12). Petitioner stated that he talked to his attorneys about the racketeering conspiracy charged in Count (1) and that he understood the charge. (CR Doc. No. 3081 at 11). Petitioner further stated that he read the Plea Agreement, understood it, and agreed to it including the appellate and post-conviction waivers. (CR Doc. No. 3081 at 12-19). He also stated that read the Factual Basis, understood it, and agreed with it. (CR Doc. No. 3081 at 19-20). Petitioner stated that nobody threated, intimidated, or forced him to plead guilty, and that nobody has made any promises of leniency or a light sentence other than the terms of his Plea Agreement, to induce him to plead guilty. (CR Doc. No. 3081 at 20). Petitioner stated that he had enough time to discuss any possible defense with his attorney and was satisfied with counsel's services. (CR Doc. No. 3081 at 20-21).

The PSR calculated the offense level of 43 based on murder, which carried the highest offense level. (CR Doc. No. 2558 at ¶¶ 38, 52). One level was added pursuant to U.S. Sentencing Guidelines § 3D1.4, resulting in a combined adjusted offense level of 44. (CR Doc. No. 2558 at ¶ 54). Three levels were deducted for acceptance of responsibility based on the Petitioner's

4

admission that "[b]etween 2009 and 2017, [Petitioner] did willfully, unlawfully, and feloniously conspire with others that a member of our enterprise, the United Bloods Nation, would commit at least two racketeering acts, including robbery, assault, and murder, in the Western District of North Carolina." (CR Doc. No. 2558 at ¶¶ 26, 56-57). Petitioner had a criminal history score of seven and two points were added because Petitioner committed the instant offense while under a criminal justice sentence. (CR Doc. No. 2558 at ¶ 65-66). This resulted in a criminal history score of nine and a criminal history category of IV. (CR Doc. No. 2558 at ¶ 67). Petitioner's advisory guideline range was between 360 months and life imprisonment, however, the Plea Agreement called for a 420-month sentence. (CR Doc. No. 2558 at ¶¶ 90, 92).

At the sentencing hearing, the Petitioner stated that he remembered being placed under oath at the Rule 11 hearing, that all of his answers to the Magistrate Judge's questions were true and correct, and that he would answer the questions the same if he were asked again. (CR Doc. No. 3082).

The Court accepted Petitioner's guilty plea and, in a Judgment entered on December 5, 2020, sentenced him to 420 months' imprisonment followed by four years of supervised release. (CR Doc. No. 2775). Petitioner did not appeal.

Petitioner filed the instant pro se § 2255 Motion to Vacate on March 23, 2021.[2] (Doc. No. 1). He argues that:[3] (1) counsel was ineffective for failing to inform the Petitioner about the elements of the offense, which rendered his guilty plea involuntary, and for failing to subject the Government's case to meaningful adversarial testing; and (2) the prosecutor engaged in

---

[2] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

[3] The claims have been liberally construed and restated.

misconduct by failing to allege or prove at least two overt acts related to the instant RICO offense.[4] Petitioner has attached to his § 2255 Motion to Vacate a Memorandum from the Federal Bureau of Prisons ("BOP") stating that Petitioner did not have access to a law library during the months of December 2020 to March 2021 due to COVID-19. (Doc. No. 1-1).

On April 1, 2021, the Court issued an Order informing the Petitioner that his § 2255 Motion to Vacate appears to be time-barred and offering him the opportunity to file a memorandum addressing the statute of limitations. (Doc. No. 2). The Petitioner filed a Response asking the Court to find the § 2255 Motion to Vacate timely based on equitable tolling. (Doc. No. 3).

## II.     SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). No response from the Government is required.

## III.     DISCUSSION

**(A)     Statute of Limitations**

---

[4] Petitioner cites 28 U.S.C. § 3535 in support of this claim, but there is no such statute.

As a preliminary matter, the § 2255 Motion to Vacate is subject to dismissal with prejudice as time-barred.

A one-year statute of limitation applies to motions to vacate under § 2255, which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

An otherwise time-barred petition is entitled to equitable tolling in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party." Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)); United States v. Prescott, 221 F.3d 686, 688 (4th Cir. 2000)("§ 2255's limitation period is subject to equitable modifications such as tolling."). Equitable tolling of petitions for collateral review is available only when the petitioner demonstrates "(1) he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S 631, 649 (2010); see Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements.").

Petitioner's Judgment became final on December 19, 2019 when the 14-day period to file a notice of appeal expired. See Fed. R. App. P. 4(b)(1), (b)(6); United States v. Osborne, 452 F. App'x 294, 295-96 (4th Cir. 2011). Petitioner therefore had until December 19, 2020 to file a

7

timely § 2255 Motion to Vacate. The Motion to Vacate was filed more than three months late on March 23, 2021.

Petitioner has failed to carry his burden of demonstrating that equitable tolling applies. According to the BOP Memorandum attached to the § 2255 Motion to Vacate, Petitioner did not have access to the prison law library between December 2020 and March 2021 because of COVID-19. Petitioner contends that he exercised due diligence by "trying to file this § 2255 in the time allowed" but that he was unable to do so because of prison conditions. (Doc. No. 3 at 1). Specifically, he alleges that he did not have access to a prison library or case law for an unspecified period and that "widespread COVID-19 pandemic in the prison system" was "clearly [an] extraordinary circumstance[]." (Id.).

Petitioner's allegations are insufficient to support equitable tolling. It appears that he lacked access to the prison law library for, at most, 19 days of the one-year limitations period. His allegation of due diligence is completely conclusory and he fails to explain how this 19-day loss of access to a law library prevented him from timely filing his § 2255 Motion to Vacate. Moreover, he filed the § 2255 Motion to Vacate in March 2021, during the time when he allegedly lacked access to the prison library. Petitioner has failed to carry his burden of demonstrating that timely filing was precluded by extraordinary circumstances, and therefore, the § 2255 Motion to Vacate is subject to dismissal with prejudice as time-barred.

Even if the § 2255 Motion to Vacate were timely, however, it would be denied on the merits because the Petitioner's claims waived and conclusively refuted by the record.

**(B)** **Merits**

 **(1)**  **Ineffective Assistance of Counsel**

Petitioner contends that counsel was ineffective for providing misadvice which rendered

his guilty plea involuntary, and for failing to subject the Government's case to adversarial testing.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

First, Petitioner contends that counsel performed deficiently by failing to tell him that the Government was been required to prove, beyond a reasonable doubt, that overt acts are related to

9

the RICO conspiracy.

RICO conspiracy requires proof of: "the existence of a RICO enterprise in which the defendant conspired to participate, and that the defendant conspired that a member of the enterprise would perform at least two racketeering acts constituting a pattern of racketeering activity." United States v. Pinson, 860 F.3d 152, 161 (4th Cir. 2017) (cleaned up) (citing Salinas v. United States, 522 U.S. 52, 62 (1997)). A "pattern of racketeering activity" requires proof that "the conspiracy involved or would have involved the commission of [at least] two racketeering acts." United States v. Taylor, 942 F.3d 205, 213 (4th Cir. 2019). To prove a "pattern of racketeering activity," the evidence must show that "the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity." Pinson, 860 F.3d at 161 (quoting H.J. Inc. v. NW Bell Tel. Co., 492 U.S. 229, 239 (1989). Racketeering acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. The RICO statute defines qualifying racketeering acts to include certain state law crimes, such as robbery and murder. 18 U.S.C. § 1961(1).

The Second Superseding Indictment alleged the foregoing elements in detail and Petitioner stated at the Rule 11 hearing that he discussed the charge with counsel and understood the charge. Further, Petitioner admitted in the Factual Basis: UBN is an "enterprise;" the purposes of the enterprise included promoting and enhancing its members' and associates' activities including robberies, murders, and other criminal activities; that he was a part of a nine-person group who beat, tazed, and shot a victim, for which Petitioner was convicted of Assault with a Deadly Weapon Inflicting Serious Injury on May 8, 2012; that he engaged in an attempted robbery, murder of one victim, and shooting of another victim on July 26, 2016; that he agreed that he or some other

member of the conspiracy would commit two or more racketeering acts, and that he personally committed two or more racketeering acts including acts involving robbery and murder; and that he was a member of the UBN enterprise as a part of which he knowingly and intentionally agreed that he or some other member of the conspiracy would commit at least two racketeering acts. As part of his acceptance of responsibility, he admitted that "[b]etween 2009 and 2017, [he] did willfully, unlawfully, and feloniously conspire with others that a member of our enterprise, the United Bloods Nation, would commit at least two racketeering acts, including robbery, assault, and murder, in the Western District of North Carolina." (CR Doc. No. 2558 at ¶ 26).

Petitioner's sworn admissions clearly establish that Petitioner actively engaged in a RICO enterprise whose purpose included robberies, murders, and other criminal activities, that he conspired to commit these activities, and that he participated in the commission of at least two such acts. Petitioner's present self-serving contentions that he did not understand the elements of the offense, that his conduct did not satisfy the elements of RICO conspiracy, and that his guilty plea was not knowingly and voluntarily entered, are conclusively refuted by his sworn statements to the contrary and are rejected. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

The Petitioner cannot demonstrate prejudice because he fails to allege or demonstrate that he would not have pleaded guilty, and would have insisted on a trial, but for counsel's alleged

misadvice. The extremely favorable Plea Agreement resulted in a guaranteed sentence of 420 months' imprisonment for the RICO conspiracy, which was punishable by up to life imprisonment, as well as the dismissal of five additional serious charges including murder. It would not have been reasonable for any defendant to reject the plea and proceed to trial under these circumstances.

Petitioner also suggests that counsel was deficient for failing to subject the Government's case to meaningful adversarial testing. However, Petitioner's knowing and voluntary guilty plea to RICO conspiracy "constitute[d] a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). The entry of his plea excused counsel from opposing the Government's case; any suggestion that counsel should have insisted that the Government prove its case despite Petitioner's entry of a knowing and voluntary guilty plea is frivolous and conclusively refuted by the record.

Therefore, Petitioner's claims of ineffective assistance of counsel would be denied on the merits if they were not time-barred.

### (2) Prosecutorial Misconduct

Finally, Petitioner argues that the prosecutor engaged in misconduct by failing to allege or prove at least two overt acts related to the RICO conspiracy.

This claim alleges an indictment error and insufficiency of the evidence; it appears that Petitioner is attempting to characterize it as one of prosecutorial misconduct to avoid the post-conviction waiver in his plea agreement. However, that waiver is binding and enforceable. See United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); Lemaster, 403 F.3d at 200.

Even if these claims were not waived, they are conclusively refuted by the record. The Second Superseding Indictment alleges that Petitioner engaged in Overt Act Nos. 14, 19, and 72, all of which are related to the UBN conspiracy. See Section (B)(1), *supra*. Petitioner admitted in

12

the Factual Basis that he engaged in the UBN enterprise and that the Overt Acts were part of the conspiracy and enterprise. Id. There was no indictment error or insufficiency in the Factual Basis. Moreover, any such claims were waived by Petitioner's knowing and voluntary guilty plea. See Willis, 992 F.2d at 490.

Therefore, even if these claims were timely filed, they would be denied because they are waived and conclusively refuted by the record.

### IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed with prejudice as time-barred and, alternatively, denied on the merits.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** with prejudice and **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: April 26, 2021

Frank D. Whitney
United States District Judge

14